**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|  |  |
|---|---|
| **ERICSSON INC.,**<br><br>　　　**Plaintiff,**<br><br>　　　v.<br><br>**COREFIRST BANK & TRUST,**<br><br>　　　**Defendant.** | Case No. 15-9301 |

## MEMORANDUM AND ORDER

This case arises out of a dispute over an overpayment of funds paid by plaintiff Ericsson, Inc. to Stutler Technologies ("Stutler"). Plaintiff remitted the mistaken overpayment into an account Stutler maintained with defendant Corefirst Bank & Trust, who then withdrew the funds from Stutler's account and applied them to an outstanding debt Stutler owed to defendant. Plaintiff now seeks restitution from defendant under equitable claims for money had and received and unjust enrichment.

The matter is now before the court on the parties' competing motions for summary judgment. (Docs. 30, 31). Defendant argues it is entitled to summary judgment because it is a bona fide payee under Restatement (Third) of Restitution and Unjust Enrichment § 67. Plaintiff claims the affirmative defense does not apply to defendant and therefore it is entitled to summary judgment as there are no disputed issues of material fact. For the following reasons, the court finds the bona fide payee defense applies to defendant and therefore grants its motion for summary judgment.

**I.     Factual Background**

The facts surrounding the dispute are largely uncontested. Stutler—who is not a party to this litigation—sold plaintiff's products and/or services and plaintiff paid Stutler commissions for its sales. These commission payments were deposited into a bank account Stutler maintained with defendant.

-1-

Defendant was also a secured creditor of Stutler. Stutler was indebted to defendant on two loans and six company credit cards. These debts were secured via a Commercial Security Agreement executed by Stutler in August 2005. The Security Agreement provided a right of setoff that stated:

> Lender reserves a right of setoff in all Grantor s accounts with Lender (whether checking savings or some other account) . . . Grantor authorizes Lender to the extent permitted by applicable law to charge or setoff all sums owing on the Indebtedness against any and all such accounts and at Lender s option to administratively freeze all such accounts to allow Lender to protect Lender s charge and setoff rights provided in this paragraph.

(Doc. 32-6, at 1.) On December 26, 2013, plaintiff remitted an electronic payment into Stutler's Corefirst bank account in the amount of $217,028.29. The following day, defendant withdrew $191,623.49 from Stutler's bank account and applied it to outstanding debts that Stutler had with defendant, including two loans and six credit cards. This payment satisfied all but one of Stutler's debts. There is a dispute between the parties as to whether any Stutler representative authorized defendant to withdraw the funds from its account. Stutler's president testified he did not direct defendant to take the money from the bank account and was not aware of any other representative that may have authorized the transaction. In an affidavit, David S. Fricke, the Executive Vice-President and General Counsel of CoreFirst, testified that Stutler had "knowledge of, consented to, and directed Corefirst to withdraw $191,623.49 from Stutler's bank account at CoreFirst and apply it to Stutler's indebtedness." (Doc. 32-2, at 2.) Additionally, Darrel Dougan, Jr., Senior Vice President of CoreFirst, testified in an affidavit that he confirmed with a Stutler representative via telephone before withdrawing the funds from Stutler's account. (Doc. 36-3, at 1.)

At some point after the transaction, plaintiff discovered it had overpaid Stutler by $122,801.97. On March 3, 2014, Stutler notified defendant of the overpayment. Plaintiff made two written demands on both Stutler and defendant for the return of the mistaken overpayment. On June 9, 2014, plaintiff

filed suit against Stutler in Texas state court for breach of contract, conversion, violation of the Texas Theft Liability Act, money had and received, and for attorney's fees. Defendant was not part of the Texas litigation. Plaintiff obtained a judgment against Stutler for the amount of the mistaken overpayment plus attorney's fees and post-judgment interest. Plaintiff filed the current action against defendant on December 1, 2015 to recover the same overpayment.

## II.     Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making the summary judgment determination, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.     Analysis

Both plaintiff and defendant have moved for summary judgment arguing they are entitled to judgment as a matter of law. Plaintiff claims it is undisputed that defendant withdrew the overpayment from Stutler's account and that plaintiff is entitled to recover the overpayment under equitable theories of money had and received and unjust enrichment. Defendant maintains it is a bona fide payee under Restatement (Third) of Restitution and Unjust Enrichment § 67 and therefore owes no restitution to plaintiff. Plaintiff argues § 67 does not apply because plaintiff did not mistakenly pay the funds to defendant, rather, defendant "unilaterally seized" the funds from Stutler.

At the outset, the court notes that the parties have stipulated that Kansas law applies in this case. Kansas law allows for recovery under equitable remedies of money had and received and unjust enrichment. In an action for money had and received, "the question . . . is to which party does the money, in equity, justice and law, belong." *Coppock v. J.C. Nichols Inv. Co.*, 69 P.2d 701, 702 (Kan. 1937). An action for money had and received "is the proper form of action for the recovery of money paid under a mistake of facts." *Blair v. Haas*, 273 P. 400, 401 (Kan. 1929).

Similarly, the theory of unjust enrichment lies "in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to him [or her]." *Haz-Mat Response, Inc., v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 846 (Kan. 1996). The elements of a claim based on unjust enrichment are: 1) a benefit conferred upon the defendant by the plaintiff; 2) an appreciation or knowledge of the benefit by the defendant; and 3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. *Id.* at 847. Citing the Restatement (First) of Restitution § 20, the court noted that it has long been established "that a person who pays an excessive amount of money to another under the erroneous belief that the parties' contract requires such payment is entitled to restitution of the excess payment." *Dorchester Exploration, Inc. v. Sunflower Elec. Co-op., Inc.*, 504 F. Supp. 926, 937 (D. Kan. 1980).

Based on these common law equitable principles, it seems clear that plaintiff is entitled to restitution for its mistaken overpayment to Stutler. And plaintiff has a judgment against Stutler for the overpayment. Plaintiff, however, seeks further contribution from defendant, claiming defendant has no rights to the funds it withdrew from Stutler's account and that it will be unjustly enriched should it be allowed to retain the mistaken overpayment. Defendant argues it owes no restitution because it is a bona fide payee under Restatement (Third) of Restitution and Unjust Enrichment § 67.

Restatement (Third) of Restitution and Unjust Enrichment § 67 is an expansion of the former "Discharge for Value" rule of the Restatement (First) of Restitution.  Section 67 provides a defense to a restitution claim to a payee who takes a payment without notice of any facts underlying a claim for restitution so long as the payee used the funds in satisfaction or reduction of the payee's valid claim as creditor of the payor or of another person.  The language of § 67 is as follows:

> (1) A payee without notice takes payment free of a restitution claim to which it would otherwise be subject, but only to the extent that
>
>> (a) the payee accepts the funds in satisfaction or reduction of the payee's valid claim as creditor of the payor or of another person;
>>
>> (b) the payee's receipt of the funds reduces the amount of the payee's claim pursuant to an obligation or instrument that the payee has previously acquired for value and without notice of any infirmity; or
>>
>> (c) the payee's receipt of the funds reduces the amount of the payee's inchoate claim in restitution against the payor or another person.
>
> (2) A payee is entitled to the defense described in this section only if payment becomes final, and the payee learns of the payment and its ostensible application, before the payee has notice of the facts underlying the restitution claim the defense would cut off. For purposes of this subsection, a payment becomes final when the payor is no longer entitled to countermand or recover it without the aid of legal process.

Restatement (Third) of Restitution and Unjust Enrichment § 67 (2011).  The revised bona fide payee defense "protects a payee without the need to demonstrate any change of position on receipt." *Id.* at cmt b.  The modern justification of the rule considers the "special interests of finality in payment transactions, rather than (or even at the expense of) considerations of equity between the parties." *Id.* Finality in payment transactions for innocent payees is particularly important because payees who take

-5-

money with "the reasonable belief that [they] are entitled to it," have an increased likelihood of reliance on those funds. *Id.*

Kansas has not expressly adopted this specific provision of the Restatement; however, plaintiff provides no authority that would indicate Kansas courts would have a strong objection to the application of this defense. Further, the Kansas courts have followed various provisions of the Restatement (First) of Restitution. *See, e.g.*, *In re Radke*, 619 P.2d 520, 525 (Kan. Ct. App. 1980); *Witmer v. Brosius' Estate*, 336 P.2d 455, 459 (Kan. 1959); *Excel Corp. v. Jimenez*, 7 P.3d 1118, 1127 (Kan. 2000). Kansas courts have also mentioned the Restatement (Third) of Restitution. *See Uhlmann v. Richardson*, 287 P.3d 287, 292 (Kan. Ct. App. 2012). With no indication otherwise, the court predicts that Kansas courts would also follow § 67.

Defendant claims it is entitled to the bona fide payee defense based on the plain language of § 67. In order for § 67 to apply, a payee must accept a payment without notice of any facts of an underlying restitution claim. The payee is only shielded from liability if it accepts the funds in satisfaction or reduction of the payee's valid claim as creditor of the payor or another person. Defendant argues it is a bona fide payee because it accepted a payment from Stutler and applied those funds to Stutler's outstanding debt, all without knowledge of the mistaken overpayment from plaintiff.

Plaintiff claims defendant is not a bona fide payee because plaintiff never directly paid defendant. Plaintiff submits that "the defense does not apply where payment is not made directly by the plaintiff to the party asserting to be the 'bona fide payee.'" (Doc. 30, at 10.) Nothing, however, in the plain language of § 67 requires a direct payment between the *claimant* and the payee, rather it requires a payment between a *payor* and payee and that the payee must be a creditor of the payor. *See* Restatement (Third) of Restitution and Unjust Enrichment § 67(1)(a). Here, plaintiff was payor to Stutler, but Stutler was the payor to defendant payee. Based on the language of § 67, defendant can be

a bona fide payee based on the payment it received from Stutler because it was Stutler's creditor and used the funds toward Stutler's debts.

Plaintiff, however, also claims the defense doesn't apply because Stutler did not remit a payment to defendant, rather, defendant "unilaterally withdrew funds from Stutler's account." (Doc. 35, at 3.) In response, defendant argues there is nothing in the rule requires a "voluntary payment," and further, defendant was authorized to charge or set off the account via the Security Agreement.

The case law interpreting § 67 is sparse. Both parties cite authority from various jurisdictions, as there is no Kansas law on point. Plaintiff claims *Gen. Motors L.L.C. v. Comerica Bank*, No. 291236, 2010 WL 5174515 (Mich. Ct. App. Dec. 21, 2010) is dispositive. In this case, General Motors made overpayments to a supplier and the supplier's bank applied the overpayments to pay down the supplier's credit loan. 2010 WL 5174515, at *1. The supplier eventually filed for bankruptcy, and General Motors sued the bank and the supplier for the overpayments on theories of unjust enrichment and constructive trust. *Id.* at *2. The Michigan Court of Appeals determined that money paid by mistake may be recovered in an action for unjust enrichment unless "the payment has caused such a change of circumstances that it would be unjust to require a refund of the mistaken payment."[1] *Id.* at *8. The court then analyzed whether General Motors was entitled to restitution under Article 9 of the Uniform Commercial Code, as the bank had a security interest in the supplier's bank account. *Id.* at *9. The court noted that under Article 9, a security interest does not attach to collateral unless "the debtor acquires rights in the collateral or the right to transfer the collateral," and that the bank had failed to establish that the supplier had acquired any rights to the overpayments. *Id*.

---

[1] Although the court did not explicitly identify it as such, this rule is cited in the commentary of § 67 as a "minority rule." *See* Restatement (Third) of Restitution and Unjust Enrichment § 67 cmt. b ("In cases at the opposite extreme—where the denial of restitution results in a dramatic windfall to the payee as the result of fraud or mistake, and where the payee (if required to do so) would be unable to show any change of position—the rule of this section is not uniformly accepted. If the court believes, either in a particular case or in a class of cases, that the equities of the parties outweigh the interests of finality and ease of adjudication, it can require as a condition of the innocent payee's affirmative defense a showing of change of position by the rule of § 65. This is the traditional rule governing restitution of payments induced by fraud and mistake, and it is still observed in a minority of jurisdictions.").

at *13–*14.  Therefore, the bank was unable to prove that Article 9 displaced General Motor's unjust enrichment claim.  *Id.* at *14.

While this court notes the factual similarities between *Gen. Motors* and the facts at hand, the court is unpersuaded by plaintiff's assertion that *Gen. Motors* is dispositive.  At issue in *Gen. Motors* was whether the plaintiff's claim for unjust enrichment was displaced by the defendant's security interest in the funds under Article 9 of the UCC.  Because Michigan applied the minority rule that money paid by mistake, absent a change in circumstances, is regarded as an involuntary payment, the court held that the bank never acquired rights in the funds and therefore no security right attached.  Here, defendant claims it owes no restitution because it is a bona fide payee under § 67—a defense that was never raised in *Gen. Motors*.  Notably, *Gen. Motors* was decided before the current draft of § 67 was published and before the current justifications of such a rule were promulgated.  There is no indication that Kansas would bypass the current form of the bona fide payee rule in favor of the more antiquated minority rule.

Defendant, on the other hand, directs the court to *Bank of America, N.A. v. P.T.A. Realty, LLC, et al.*, 132 A.3d 689 (R.I. 2016).  In this case, a bank placed its borrower in a receivership and the receiver took possession of the borrower's property in order to sell it.  *Id.* at 691.  After the property was sold, the buyer agreed to pay taxes and the bank was to receive the net proceeds.  *Id.*  The buyer's agent calculated the taxes, and the proceeds from the sale were distributed to pay the taxes, with the remainder going to the receiver.  *Id.*  After deducting other fees, the receiver distributed the net proceeds to the bank, which the bank used to offset its secured claim on the property.  *Id.*  After the bank received the proceeds, the buyer's agent realized it had miscalculated the taxes and that the bank had received $80,000 in additional proceeds that should have been used to pay the taxes.  *Id.* at 692.  The buyer sought restitution of the $80,000 overpayment under a theory of unjust enrichment.  *Id.*  The

bank argued it was not obligated to return the money because it was a third-party creditor who took the payment without any notice of the error in tax calculations. *Id.* The Rhode Island Supreme Court, in citing § 67, found that the bank received the excess funds in good faith, which prohibited the buyer from recovering the overpayment under a theory of unjust enrichment. *Id.* at 693–94.

The Iowa Court of Appeals also applied § 67 in a case where a bank and its customer agreed to each wire funds to a financer in order to pay off the lien on the customer's collateral. *The Nat'l. Bank v. FCC Equip. Fin., Inc.*, 801 N.W.2d 17, 18 (Iowa Ct. App. 2011). The bank was then going to retain a security interest in that collateral. *Id.* After the bank wired the funds to the financer, the customer realized it did not have the money to pay off the balance. *Id.* The bank then sought recovery of the funds it wired to the financer under a theory of unjust enrichment. *Id.* After citing a number of jurisdictions who had adopted the § 67 defense, the Iowa Court of Appeals reasoned that "[t]he underlying justification for the rule is that a creditor receiving money in satisfaction of a debt has not been unjustly enriched." *Id.* at 21. In adopting § 67, the court noted the "sound economic and policy reasons" behind the rule as explained by the Seventh Circuit:

> A creditor should be able to treat funds credited in apparent payment of a debt as irrevocably his, unless news of the error precedes arrival of the funds. Costs of errors should be borne by those who make errors (the better to induce them to take care) rather than by innocent beneficiaries.

*Id.* (citing *Gen. Elec. Corp. v. Cent. Bank*, 49 F.3d 280, 284 (7th Cir. 1995).

The court is persuaded by the underlying rationale behind § 67 and believes it applies in the present case. Defendant took funds from Stutler's bank account. Regardless of whether a Stutler representative authorized that particular payment, defendant exercised its setoff rights to apply funds from Stutler's account toward its indebtedness. Therefore, because defendant accepted funds from Stutler in reduction of its debts and without knowledge that the funds were the result of an overpayment, defendant is a bona fide payee under the plain language of § 67.

Plaintiff further argues that under the plain language of § 67, the bona fide payee defense does not apply to "overpayments." Plaintiff directs the court to a paragraph under comment d of § 67, which states:

> A defense based on § 67(1)(a) requires that the payment reduce the amount of a valid obligation. One elementary consequence of this limitation is that this section affords no defense to restitution of an overpayment.

Restatement (Third) of Restitution and Unjust Enrichment § 67 (2011) cmt d. Yet as defendant correctly points out, this provision, taken in context with the rest of the comment, seems to indicate that a creditor who accepts more than necessary to satisfy outstanding debts, is not entitled to the bona fide payee defense and must return any funds that exceed the debt which was owed. *See id.*, illustration 10. Here, after defendant applied the funds towards the balances of Stutler's loans and credit cards, there was outstanding debt remaining. Therefore, there was no overpayment that defendant owed back to Stutler. This comment to § 67 does not apply to the type of "overpayment" made by plaintiff to Stutler.

For these reasons, the court finds that defendant is a bona fide payee under § 67 and therefore owes no restitution to plaintiff for the mistaken overpayment made to Stutler.

**IT IS THEREFORE ORDERED** that defendant CoreFirst Bank & Trust's Motion for Summary Judgment (Doc. 31) is granted.

**IT IS FURTHER ORDERED** that plaintiff Ericsson's Motion for Summary Judgment (Doc. 30) is denied.

This case is closed.

Dated July 19, 2017, at Kansas City, Kansas.

                                           s/ Carlos Murguia
                                           **CARLOS MURGUIA**

                    **United States District Judge**